E-FILED
Thursday, 08 October, 2020  01:37:42 PM
Clerk, U.S. District Court, ILCD

FILED

OCT - 7 2020

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 20-30065 |
| | ) |
| v. | ) |
| | ) Violations: Title 18, United |
| TARNAVIS LEE and | ) States Code, Sections 1341, |
| ELIZABETH MCFARLAND, | ) 1343, 1956(a)(1)(A)(i), and 2 |
| | ) |
| Defendants. | ) |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNTS 1 - 35
### (Mail and Wire Fraud)

At times material to this indictment:

### The Illinois Department of Human Services

1.    The Illinois Department of Human Services (DHS) was an

agency of the State of Illinois charged with, among other things,

providing Illinois residents transitioning from educational programs or

welfare to work and economic independence with a variety of

community-based services, including affordable child care.

1

2.      The Child Care Assistance Program (CCAP) was a DHS program designed to provide low-income families with affordable child care. The CCAP required eligible families to pay a portion of the cost of child care on a sliding scale according to family size, income, and the number of children in care. Through CCAP, the State of Illinois paid the remaining cost of child care services.

3.      The funding for the CCAP was comprised mostly of a mixture of General Revenue Funds from the State of Illinois and from the Temporary Assistance for Needy Families (TANF) and the Child Care Development Fund block grants from the United States Department of Health and Human Services. For the fiscal years 2010 (July 1, 2009 through June 30, 2010) through 2019 (July 1, 2018 through June 30, 2019), the CCAP was funded with a combination of funds from the State of Illinois of approximately 51% and funds from the United States Department of Health and Human Services of approximately 49%.

4.      Illinois Action for Children (IAC), formerly known as the Day Care Action Council of Illinois, was a child care resource and

2

referral agency, located in Cook County, Illinois, that was contracted by

DHS to oversee and administer the CCAP for residents of Cook County.

5.      Pursuant to CCAP guidelines, eligibility for assistance for

child care services was determined based on certain factors, including

family size, income of applicants, and number of children in the family.

Each applicant residing in Cook County and requesting child care

subsidy payments on behalf of his or her child(ren) was required to

submit a DHS Child Care Application to IAC. The application required

an applicant to provide information, including the applicant's work

information, (i.e. his or her employer, hourly or yearly wage, work

schedule) or information about the educational program, (i.e. the name

of his or her school, description of purpose of program, class schedule),

income information, the name of each child for whom the applicant was

seeking child care payments, whether the need for child care was full-

time or part-time, and family size. An applicant who was unemployed or

not enrolled in a DHS approved educational program was not typically

eligible to receive child care assistance.

6.      The initial DHS application and the Request for

Redetermination form for continuing eligibility also required the

potential child care provider to submit "provider information," including the location where care would be provided, the date care did or would commence, and licensing information.

7.      Once IAC determined that the applicant was eligible for child care assistance, the applicant was entitled to receive CCAP subsidy payments as an approved client.

8.      Each client eligible for CCAP subsidy payments was typically required to make a co-payment for child care services directly to the child care provider. The child care provider, in turn, submitted a "Child Care Certificate" (CCC) to IAC seeking payment for the remaining value of the child care services provided to the client.

9.      Upon receipt of the CCC from the provider, IAC processed the form by entering data from the CCC into the Human Services Child Care Management System (HSCCMS) computer system maintained by DHS, and, if approved, caused a warrant (check) or Automated Clearing House (ACH), also known as direct deposit, payment to be issued from the Illinois State Comptroller to the provider for the payment of child care services.

10.    Child care providers could also submit claims for the remaining value of the child care services by calling the DHS Integrated Voice Response (IVR) system and using their telephone to enter claim information into the HSCCMS maintained by DHS. Payments to the child care providers for approved child care claims were then made by the Illinois State Comptroller through the issuance of a warrant (check) or a direct deposit to a bank account of the child care provider.

### The Illinois State Comptroller

11.    The Illinois State Comptroller maintained a bank account through JPMorgan Chase, NA for, among other things, making payments to child care providers under the CCAP program.

12.    The Illinois State Comptroller computers that created the computer file that initiated the ACH (direct deposit) process were located in Springfield, Illinois.

13.    The computers used by JPMorgan Chase, NA that processed the computer file created by the Illinois State Comptroller were at times located outside Illinois.

## The Corporation for National and Community Service

14.    The Corporation of National and Community Service (CNCS) was an independent federal agency charged with improving lives, strengthening communities, and fostering civic engagement through service and volunteering. As part of meeting its obligations under federal law, CNCS provided grants and funding to non-profit organizations.

15.    AmeriCorps was a program run by CNCS that coordinated volunteer opportunities at the organizations that received funding through CNCS with individuals who wished to volunteer.

16.    AmeriCorps volunteers typically agreed to perform services for a one year period. In exchange, they would be provided a living allowance for their service, health care benefits, and, if needed, child care benefits. If they completed their term of service, they would also be qualified to receive an education award that could be used to pay educational expenses at eligible post-secondary institutions or to repay qualified student loans.

17.    Gap Solutions was a company contracted by CNCS to process and pay child care claims for AmeriCorps volunteers. CNCS

paid Gap Solutions for, among other things, the child care paid on behalf of CNCS.

## The Defendants

18.    Defendant **TARNAVIS LEE** resided in Chicago and Burbank, Illinois and, with her spouse, owned and operated Hills Transportation, Hill's Transportation, Hills Transportation Service, and Hill's Transportation Service. Defendant **LEE** also owned Lee's Toddler Town Inc., a licensed child care business located in Chicago, which provided full-time and part-time child care services.

19.    Defendant **LEE**, individually and as the sole owner and officer of Lee's Toddler Town, participated in the CCAP as a licensed child care provider and submitted claims, or caused claims to be submitted, for child care services to IAC and DHS. Defendant **LEE**, as the sole owner and officer of Lee's Toddler Town, also submitted claims, and caused claims to be submitted, for child care services to CNCS through Gap Solutions.

20.    Defendant **ELIZABETH MCFARLAND** resided in Chicago and Nashville, Tennessee, and was the sole owner and operator of Tater Tots, Inc., a licensed child care provider located in Chicago. Tater Tots

also provided full-time and part-time child care services. Defendant

**MCFARLAND**, individually and as the sole owner and officer of Tater

Totts, participated in the CCAP as a licensed child care provider and

submitted claims, and caused claims to be submitted, for child care

services to IAC and DHS.

### The Scheme to Defraud and to Obtain Money and Property

21.   Beginning in approximately January 2009 and continuing to

approximately April 2019, the defendants,

**TARNAVIS LEE and ELIZABETH MCFARLAND,**

knowingly devised and participated in a scheme to defraud the State of

Illinois, the United States, and others and to obtain their money and

property by means of false and fraudulent pretenses, representations,

promises, and material omissions.

22.   As part of the scheme, Defendants **LEE and MCFARLAND**

fraudulently obtained CCAP subsidy payments from the State of Illinois

by, among other things, submitting and causing the submission of false

and fraudulent records and information to IAC and DHS containing

materially false and fictitious information regarding: (a) CCAP

applicants' eligibility to receive CCAP subsidy payments; and (b) the

type of child care and the child care services actually provided by

Defendants **LEE and MCFARLAND,** Lee's Toddler Town, and Tater

Tots.

23.   As part of the scheme, Defendant **LEE** provided the DHS

Child Care Application and Request for Redetermination forms to

existing and potential child care clients so that the clients could apply

for and be determined eligible to receive the CCAP subsidy payments

and to maintain their continuing eligibility for such payments.

Defendant **LEE** also completed or assisted parents in completing the

application and redetermination forms.

24.   As part of the scheme, Defendant **LEE** prepared and

submitted to IAC and DHS materially false and fraudulent applications

and redetermination forms on behalf of parents seeking approval for the

parents as an eligible client. Both Defendants **LEE and MCFARLAND**

knew that many of the applications and redetermination forms

contained false information regarding a client's employment and

income, the period of time a child would spend at Lee's Toddler Town

and Tater Tots, the number and names of children receiving child care

services, and the actual location where child care services were to be provided.

25.    As part of the scheme, Defendant **LEE**, with Defendant **MCFARLAND's** knowledge as to Tater Tots clients, knowingly submitted, and caused to be submitted, on behalf of herself personally, Lee's Toddler Town, and Tater Tots, fraudulent CCC Reports to IAC and DHS, either in document form to IAC or in electronic form through the IVR directly to DHS, that falsely represented the names of children receiving child care services, the number of days attended, and whether the children attended full or part-time, in order to receive CCAP payments to which Defendants **LEE and MCFARLAND** were not entitled. Defendant **LEE** also falsely certified, and caused others to falsely certify, that the information contained in the CCC Reports was complete and accurate.

26.    As part of the scheme, Defendants **LEE and MCFARLAND** caused the State of Illinois to issue CCAP subsidy payments to Defendant **LEE**, Lee's Toddler Town, and Tater Tots, either in the form of a mailed state warrant or check or electronically through direct deposit into bank accounts over which Defendants **LEE and**

MCFARLAND exercised control. Following receipt of the subsidy payments issued to Tater Tots, Defendants **LEE and MCFARLAND** caused more than one-half of the funds electronically deposited to be transferred to accounts over which only Defendant **LEE** exercised control.

27. As part of the scheme, Defendant **LEE** repeatedly made kickback payments to parents that were purported clients of Lee's Toddler Town and Tater Tots with funds from false claims for subsidy payments that were submitted to IAC and DHS. Between January 2009 and June 2018, Defendant **LEE** made approximately 201 payments totaling approximately $123,000 to approximately 9 parents.

28. As part of the scheme, Defendant **LEE** submitted duplicate claims for child care services to both IAC and DHS and CNCS, totaling more than $20,000, for the same children and time period during which child care services were purportedly provided.

29. As part of the scheme, and after Defendant **MCFARLAND** moved from Chicago to Nashville in approximately August 2016, Defendants **LEE and MCFARLAND** submitted, and caused to be submitted, fraudulent claims for child care subsidy payments, falsely

11

representing that Defendant **MCFARLAND** was continuing to provide

child care services through Tater Tots in Chicago.

30. As a result of their scheme, Defendants **LEE and**

**MCFARLAND** caused a total of approximately $1,473,000 in claims to

be submitted to IAC and DHS for purported child care services provided

by Defendants **LEE and MCFARLAND,** and Lee's Toddler Town and

Tater Tots and a loss to the State of Illinois and the United States of

approximately more than $600,000.

## Executions of the Scheme: Mail Fraud
## COUNTS 1 - 10

31. On or about the below-listed dates, and for each count, the

defendant,

### TARNAVIS LEE,

for the purpose of executing, and attempting to execute, the scheme to

defraud and to obtain money by means of materially false and

fraudulent pretenses, representations, and promises, caused to be

delivered by the United States Postal Service, according to the

directions thereon, mail matter consisting of a warrant or check

representing the below-identified payments to Lee's Toddler Town for

child care services not rendered, or not rendered to the extent claimed,
as indicated below:

| Count | Check / Warrant No. | Date | Amount | Parent |
|---|---|---|---|---|
| 1 | 57360 | 11/23/15 | $3,395.20 | SB |
| 2 | 57896 | 1/19/16 | $2,857.36 | SB |
| 3 | 58213 | 2/12/16 | $2,094.40 | SB |
| 4 | AB4800082 | 3/8/16 | $3,139.60 | SB |
| 5 | 58531 | 3/14/16 | $2,288.88 | SB |
| 6 | 58920 | 4/15/16 | $2,677.84 | SB |
| 7 | 22892 | 5/13/16 | $2,288.88 | SB |
| 8 | 23394 | 6/24/16 | $2,288.88 | SB |
| 9 | 23669 | 7/22/16 | $3,156.56 | SB |
| 10 | 23925 | 8/19/16 | $2,842.40 | SB |

All in violation of Title 18, United States Code, Sections 1341 and
2.

## Executions of the Scheme: Wire Fraud
## COUNTS 11 - 23

32.   On or about the below-listed dates, and for each count, the

defendant,

### TARNAVIS LEE,

for the purpose of executing, and attempting to execute, the scheme to

defraud and to obtain money by means of materially false and

fraudulent pretenses, representations, and promises, did transmit and

cause to be transmitted by means of wire communications in interstate

and foreign commerce, certain writings, signs, signals, sounds, and

images, in that she submitted, or caused to be submitted, the below-

identified payments to Lee's Toddler Town for child care services not

rendered, or not rendered to the extent claimed, causing the Illinois

State Comptroller, located in the Central District of Illinois, to transmit

information to JPMorgan Chase, NA, whose servers were located

outside the state of Illinois, the direct deposits listed below:

| Count | Date | Amount | Parent |
|-------|------|--------|--------|
| 11 | 4/7/17 | $3,264.80 | SB |
| 12 | 6/1/17 | $2,852.00 | SB |
| 13 | 6/7/17 | $3,151.20 | SB |

| 14 | 7/11/17 | $3,151.20 | SB |
| 15 | 4/9/18  | $1,407.84 | CJ |
| 16 | 5/7/18  | $1,342.62 | CJ |
| 17 | 6/7/18  | $1,407.84 | CJ |
| 18 | 6/7/18  | $636.24   | RA |
| 19 | 6/28/18 | $2,491.96 | SB |
| 20 | 6/28/18 | $776.60   | RA |
| 21 | 7/9/18  | $1,347.62 | RA |
| 22 | 8/17/18 | $1,347.62 | RA |
| 23 | 9/12/18 | $1,478.06 | RA |

All in violation of Title 18, United States Code, Sections 1343, and

2.

## Executions of the Scheme: Wire Fraud
## COUNTS 24 - 35

33.  On or about the below-listed dates, for each count, the defendants,

### TARNAVIS LEE and ELIZABETH MCFARLAND,

for the purpose of executing, and attempting to execute, the scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, sounds, and images, in that she submitted, or caused to be submitted, the below-identified payments to Tater Tots for child care services not rendered, or not rendered to the extent claimed, causing the Illinois State Comptroller, located in the Central District of Illinois, to transmit information to JPMorgan Chase, NA, whose servers were located outside the state of Illinois, the direct deposits listed below:

| Count | Date | Amount | Parent |
|-------|------|--------|--------|
| 24 | 3/7/17 | $595.40 | MB |
| 25 | 3/7/17 | $2,371.47 | LC |
| 26 | 3/7/17 | $1,277.40 | RA |

| 27 | 3/13/17 | $631.24 | RA |
| 28 | 4/7/17 | $685.16 | MB |
| 29 | 4/7/17 | $2,191.66 | LC |
| 30 | 4/19/17 | $1,478.06 | RA |
| 31 | 5/5/17 | $2,199.00 | LC |
| 32 | 5/5/17 | $1,282.40 | RA |
| 33 | 6/6/17 | $405.95 | LC |
| 34 | 6/7/17 | $2,419.20 | LC |
| 35 | 6/7/17 | $1,412.84 | RA |

All in violation of Title 18, United States Code, Sections 1343, and

2.

## COUNTS 36 - 42
### (Money Laundering)

1.     Paragraphs 1 through 33 of Counts 1 through 35 are hereby re-alleged and incorporated by reference.

2.     On or about the dates listed below, for each count, the defendant,

### TARNAVIS LEE,

did knowingly conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely, mail and wire fraud, as charged in Counts 1 through 35 of this Indictment, with the intent to promote the carrying on of a specified unlawful activity, namely, mail and wire fraud, as charged in Counts 1 through 35 of this Indictment, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date | Receiver | Amount |
|---|---|---|---|
| 36 | 10/22/15 | MB | $1,466.80 |
| 37 | 1/21/16 | MB | $625.00 |
| 38 | 2/9/17 | CJ | $396.00 |
| 39 | 3/9/18 | CJ | $638.00 |

18

| 40 | 5/9/18 | CJ | $670.00 |
| 41 | 6/11/18 | CJ | $653.00 |
| 42 | 1/19/18 | CJ | $605.00 |

All in violation of Title 18 United States Code, Sections 1956(a)(1)(A)(i) and 2.

## FORFEITURE ALLEGATIONS

3.    The allegations contained in Counts 1 through 35 and Counts 36 through 43 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(c), 982(a)(1), and Title 28 United States Code, Section 2461(c).

4.    Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1341, 1343, and 1956(a)(1)(A)(i) as set forth in Counts 1 through 43 of this Indictment, the defendant,

### TARNAVIS LEE,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(c), 982(a)(1), and Title 28 United States Code, Section 2461(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds

19

traceable to the commission of the offenses. The property to be forfeited includes, but is not limited to, the following:

(a) 2016 BMW X4, VIN 5UXXW3C59G0R18957, in the name of Tarnavis Lee.

(b) Chase Bank Checking Account Number XXXXX0587 in the name of Lee's Toddler Town.

(c) Chase Bank Checking Account Number XXXXX0615 in the name of Tarnavis Lee and Joshua Hill.

(d) Chase Bank Savings Account Number XXXXX1952 in the name of Hills Transportation.

(e) Chase Bank Checking Account Number XXXXX6897 in the name of Hills Transportation.

(f) Chase Bank Checking Account Number XXXXX9495 in the name of Tarnavis Lee.

A TRUE BILL

s/ Forepreson

FOREPERSON

s/ Gregory M. Gilmore

for

JOHN C. MILHISER
UNITED STATES ATTORNEY/TB

20